UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANNA MARIE CASTRONOVO, in her individual
capacity as the Beneficiary of life insurance policies
issued on the life of her brother-in-law William
Kolakowski; ANNA MARIE CASTRONOVO, in
her capacity as the Administrator of the Estate of
William Kolakowski; and ANNA MARIE
CASTRONOVO, in her capacity as the attorney-in-
fact for William Kolakowski, during the life of
William Kolakowski, under a power of attorney,

                              Plaintiffs,         Case No: 1:16-cv-3775

    -against-

CIGNA LIFE INSURANCE COMPANY OF NEW
YORK and CREDIT SUISSE SECURITIES (USA)
LLC,

                              Defendants.         **COMPLAINT**
----------------------------------------------------------------x

Plaintiffs, by and through their undersigned counsel, respectfully allege as follows in support of Plaintiffs' claims for relief against Defendants:

### THE PARTIES

1. Plaintiff Anna Marie Castronovo, in her individual capacity as the Beneficiary of life insurance policies issued on the life of her brother-in-law William Kolakowski ("Plaintiff-Beneficiary"), is a citizen of the State of New Jersey with a residence in the City of Brick, County of Ocean.

2. Plaintiff Anna Marie Castronovo, in her capacity as the Administrator of the Estate of William Kolakowski ("Plaintiff-Administrator"), was appointed by, and granted fiduciary duties from, the Surrogate's Court in the State of New Jersey for the County of Middlesex and, therefore, Plaintiff-Administrator is a citizen of the State of New Jersey with a residence in the City of Brick, County of Ocean.

1

3. Plaintiff Anna Marie Castronovo, in her capacity as the attorney-in-fact for William Kolakowski, during the life of William Kolakowski, under a power of attorney ("Plaintiff-POA"), is a citizen of the State of New Jersey with a residence in the City of Brick, County of Ocean.

4. Plaintiff-Beneficiary, Plaintiff-Administrator and Plaintiff-POA, when referred to collectively, shall be defined herein as "Plaintiffs."

5. Upon information and belief, Defendant CIGNA Life Insurance Company of New York ("CIGNA") is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 2 Grand Central Tower, 140 East 45th Street, 39th Floor, New York, New York 10017.

6. Upon information and belief, Defendant Credit Suisse Securities (USA) LLC ("CS") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 11 Madison Avenue, 24th Floor, New York, New York 10010.

7. CIGNA and CS, when referred to collectively, shall be defined herein as "Defendants."

### JURISDICTION AND VENUE

8. Pursuant to 28 U.S.C. 1332, the Court has subject matter jurisdiction over this action based upon the diversity of citizenship of the parties and an amount in controversy in excess of $75,000.

9. Pursuant to 28 U.S.C. 1391, venue over this action lies in the Southern District of New York because, upon information and belief, the life insurance policies that are the subject matter of this action were issued by CIGNA in the Southern District of New York

2

and/or such life insurance policies were accepted by, and delivered to, William Kolakowski, the Insured, in the Southern District of New York.

## THE DISPUTES

10. William Kolakowski ("Bill"), a citizen of the State of New Jersey, was employed by, and worked for, CS and/or one or more of CS's subsidiaries, affiliates and related companies (whether individually or collectively, as the case may be, "CS").

11. Pursuant to Bill's employment agreement with, and employment rights from, CS, Bill acquired employment benefits of various kinds from CS, including but not limited to Bill's life insurance rights under a group employee life insurance policy, issued by CIGNA, in connection with CS's long term disability benefits plan (the "LTD Life Insurance Plan").

12. Under the LTD Life Insurance Plan, Bill acquired and paid for his life insurance rights in the form of (a) a basic life insurance policy, insuring Bill's life, for a death benefit of $50,000 (the "Basic Policy Proceeds"), pursuant to which Bill designated Plaintiff-Beneficiary, Bill's sister-in-law, as the Beneficiary thereunder (the "Basic Policy"), and CIGNA agreed to pay the Basic Policy Proceeds to Plaintiff-Beneficiary upon Bill's death and (b) a supplemental life insurance policy, insuring Bill's life, for a death benefit equal to a multiple of three times the amount of Bill's employment compensation as of a designated date, in the aggregate sum of at least $189,000 (the "Supplemental Policy Proceeds"), pursuant to which Bill designated Plaintiff-Beneficiary, Bill's sister-in-law, as the Beneficiary thereunder (the "Supplemental Policy"), and CIGNA agreed to pay the Supplemental Policy Proceeds to Plaintiff-Beneficiary upon Bill's death.

13. Hereinafter, the Basic Policy Proceeds and the Supplemental Policy Proceeds shall be collectively defined as the "Policy Proceeds." Hereinafter, the Basic Policy and the Supplemental Policy shall be collectively defined as the "Policy."

14. During Bill's employment with CS, Bill suffered a long term disability, pursuant to which (a) Bill acquired life insurance rights under the Policy to have the Policy Proceeds paid by CIGNA to Plaintiff-Beneficiary upon Bill's death, in the aggregate sum of at least $239,000 and (b) Plaintiff-Beneficiary acquired life insurance rights to receive the Policy Proceeds from CIGNA, upon Bill's death, in the aggregate sum of at least $239,000.

15. During Bill's employment with CS, and due to Bill's long term disability, Bill executed a power of attorney, pursuant to which Bill appointed and authorized Plaintiff-POA to act and serve as Bill's power of attorney with the duty and responsibility to administer and manage all of Bill's assets and affairs, including but not limited to Bill's life insurance rights under the Policy to have the Policy Proceeds paid by CIGNA to Plaintiff-Beneficiary, upon Bill's death, in the aggregate sum of at least $239,000 (the "POA").

16. Notice of the existence of the POA was provided by Bill and/or Plaintiff-POA to CS, including but not limited to notice in the form of providing a copy of the written POA instrument to CS, in connection with Bill's life insurance rights under CS's LTD Life Insurance Plan, such as Bill's life insurance rights under the Policy to have the Policy Proceeds paid by CIGNA to Plaintiff-Beneficiary, upon Bill's death, in the aggregate sum of at least $239,000 (the "POA-CS Notice").

17. Upon information and belief, the POA-CS Notice was provided by CS to CIGNA,

4

including but not limited to notice in the form of providing a copy of the written POA instrument to CIGNA, in connection with Bill's life insurance rights under CS's LTD Life Insurance Plan, such as Bill's life insurance rights under the Policy to have the Policy Proceeds paid by CIGNA to Plaintiff-Beneficiary, upon Bill's death, in the aggregate sum of at least $239,000.

18. Upon information and belief, CS is an agent of and/or authorized representative for CIGNA in connection with Bill's life insurance rights under CS's LTD Life Insurance Plan, such as Bill's life insurance rights under the Policy to have the Policy Proceeds paid by CIGNA to Plaintiff-Beneficiary, upon Bill's death, in the aggregate sum of at least $239,000 - - and, therefore, CS's knowledge of the existence of the POA-CS Notice, including but not limited to notice in the form of CS's having been provided with a copy of the written POA instrument, also operates to provide CIGNA with knowledge of the existence of the POA-CS Notice, including but not limited to notice in the form of CIGNA having been provided with a copy of the written POA instrument.

19. Once CS and/or CIGNA were provided with the POA-CS Notice, in whatever form, CS and/or CIGNA had a duty and obligation to send all letters, communications, notices, premium invoices and other documents regarding the Policy (collectively, the "Policy Notices") to Plaintiff-POA.

20. Prior to Bill's death, CS and/or CIGNA failed to send Policy Notices to Plaintiff-POA, and/or Plaintiff-POA failed to receive Policy Notices, including but not limited to the failure of CS and/or CIGNA to send, and/or the failure of Plaintiff-POA to receive, a legally required life insurance benefits notice (the "Policy Conversion Notice") informing Plaintiff-POA that, according to CS's records, Bill's continued eligibility to receive life

insurance benefits under the LTD Life Insurance Plan had allegedly expired, as of February 20, 2016, thereby triggering a period of not less than 31 days (and, perhaps, 45 days) during which Plaintiff-POA, on behalf of Bill, was required to notify CS and/or CIGNA that Plaintiff-POA, on behalf of Bill, had elected to convert Bill's life insurance rights (the "Conversion Election") from a group life insurance policy governed by the LTD Life Insurance Plan to an individual life insurance policy (the "Converted Policy"), to be solely governed by the contractual relationship between CIGNA (as life insurance company), Bill (as insured), and POA-Beneficiary (as the contractually designated beneficiary of the Converted Policy).

21. Prior to Bill's death, Michael B. Wolk, Esq. of Law Offices of Michael B. Wolk, P.C. ("Bill-Beneficiary-POA Attorney") provided CS and/or CIGNA with written notice that the Bill-Beneficiary-POA Attorney represented the rights and interests of Bill, Plaintiff-POA and Plaintiff-Beneficiary in connection with, *inter alia*, Bill's life insurance rights, as controlled and exercised by Plaintiff-POA, under the Policy and/or the LTD Life Insurance Plan.

22. Prior to Bill's death, CS and/or CIGNA failed to send Policy Notices to the Bill-Beneficiary-POA Attorney, and/or the Bill-Beneficiary-POA Attorney failed to receive Policy Notices, including but not limited to the failure of CS and/or CIGNA to send, and/or the failure of the Bill-Beneficiary-POA Attorney to receive, the Policy Conversion Notice informing the Bill-Beneficiary-POA Attorney, on behalf of Bill, that, according to CS's records, Bill's continued eligibility to receive life insurance benefits under the LTD Life Insurance Plan had allegedly expired, as of February 20, 2016, thereby triggering a period of not less than 31 days (and, perhaps, 45 days) during which the Bill-Beneficiary-

POA Attorney, on behalf of Bill, was required to exercise the Conversion Election notifying CS and/or CIGNA that the Bill-Beneficiary-POA Attorney, on behalf of Bill, had elected to proceed with a Converted Policy, pursuant to which Bill's life insurance rights from a group life insurance policy governed by the LTD Life Insurance Plan were converted to an individual life insurance policy, to be solely governed by the contractual relationship between CIGNA (as life insurance company), Bill (as insured), and POA-Beneficiary (as the contractually designated beneficiary of the Converted Policy).

23. Upon information and belief, prior to Bill's death, CS and/or CIGNA failed to send Policy Notices to Bill, including but not limited to the failure of CS and/or CIGNA to send, and/or the failure of Bill to receive, the Policy Conversion Notice informing Bill that, according to CS's records, Bill's continued eligibility to receive life insurance benefits under the LTD Life Insurance Plan had allegedly expired, as of February 20, 2016, thereby triggering a period of not less than 31 days (and, perhaps, 45 days) during which Bill was required to exercise the Conversion Election notifying CS and/or CIGNA that Bill had elected to proceed with a Converted Policy, pursuant to which Bill's life insurance rights from a group life insurance policy governed by the LTD Life Insurance Plan were converted to an individual life insurance policy, to be solely governed by the contractual relationship between CIGNA (as life insurance company), Bill (as insured), and POA-Beneficiary (as the contractually designated beneficiary of the Converted Policy).

24. Bill was hospitalized during March 2016 and, soon thereafter, Bill died on April 10, 2016.

25.     Even if, for the sake of argument, CS and/or CIGNA did not have a duty and obligation to send Policy Notices (including, but not limited to, the Policy Conversion Notice) to Plaintiff-POA and/or the Bill-Beneficiary-POA Attorney (and, as set forth above, CS and/or CIGNA did have such a duty and obligation) - - and even if, for the sake of argument, CS and/or CIGNA did, in fact, send Policy Notices (including, but not limited to, the Policy Conversion Notice) to Bill (and, as set forth above, upon information and belief, CS and/or CIGNA did not send a Conversion Notice to Bill) - - Bill's hospitalization during March 2016 and, soon thereafter, Bill's death on April 10, 2016 means that, under applicable law, Bill did not receive the Conversion Notice, and/or the Conversion Notice never became legally effective under applicable law and, as such, the period of time for the exercise of the Conversion Election never commenced (much less expired) prior to Bill's death.

26.     Subsequent to Bill's death, Michael B. Wolk, Esq. of Law Offices of Michael B. Wolk, P.C., acting as the attorney for Bill, Plaintiff-POA, the Estate of William Kolakowski ("Bill Estate"), Plaintiff-Administrator of the Bill Estate and Plaintiff-Beneficiary (collectively, "Plaintiffs' Attorney") communicated in writing and by email with CS and/or CIGNA, on numerous occasions, notifying CS and/or CIGNA that (a) Plaintiff-Beneficiary had a legal right to payment of the Policy Proceeds from CIGNA in the aggregate sum of at least $239,000 and (b) demanding that CIGNA make payment of the Policy Proceeds to Plaintiff-Beneficiary in the aggregate sum of at least $239,000.

27.     On May 10, 2016, outside counsel for CS emailed a letter to Plaintiffs' Attorney claiming, *inter alia*, that (a) as of February 20, 2016 (the "Termination Date"), Bill's long-term disability ("LTD") benefits allegedly expired; (b) as of February 20, 2016,

Bill's eligibility to receive life insurance benefits, as part of his LTD benefits, under the LTD Life Insurance Plan allegedly expired; (c) on February 23, 2016, CS allegedly mailed "required benefits notices" to Bill; (d) Bill must notify CIGNA of a Conversion Election, exercising the right to convert life insurance benefits from a group life insurance policy to an individual life insurance policy, within 31 days after the date on which Bill receives a Policy Conversion Notice regarding the conversion of his life insurance benefits from a group life insurance policy to an individual life insurance policy - - or within 45 days after the date on which Bill receives the Policy Conversion Notice if such Policy Conversion Notice is not received within 14 days after the Termination Date; (e) if Bill exercises the Conversion Election within the applicable time period after receiving the Policy Conversion Notice, then Bill must pay the first premium for a converted life insurance policy within 31 days after the date on which life insurance coverage ends; (f) "According to the Company's [CS's] records, Mr. Kolakowski [Bill] did not make an election to convert coverage during the required timeframe."; (g) CS's Benefits Committee, or its designee, "has the authority to make any and all determinations relating to questions of eligibility to participate in the LTD Life Insurance Plan"; and (h) CIGNA retains "discretionary authority to determine eligibility for benefits" under a life insurance policy.

28.  On May 10, 2016, Plaintiffs' Attorney responded by email to CS's letter from earlier that same day, informing CS and/or CIGNA as follows: (a) Bill did not receive a Policy Conversion Notice and request was made for CS and/or CIGNA to provide whatever "records" on which CS and/or CIGNA are relying to prove that Bill received a Policy Conversion Notice; (b) If Bill did not receive a Policy Conversion Notice, then the

time period for Plaintiff-Administrator, as the court-authorized fiduciary of Bill's Estate, to exercise the Conversion Election has not even commenced (much less expired), pursuant to which Plaintiff-Beneficiary has the right to receive the Policy Proceeds under the Converted Policy; (c) Plaintiff-Administrator, in such May 10 email, has exercised the Conversion Right to convert Bill's group life insurance policy to an individual policy and, accordingly, Plaintiff-Beneficiary has the right to receive the Policy Proceeds under the Converted Policy; (d) the failure by CS and/or CIGNA to provide Plaintiff-POA, Bill's attorney-in-fact with a power of attorney to administer and manage his life insurance rights and affairs during Bill's life, with a Policy Conversion Notice means that the time period to exercise the Conversion Election has not even commenced (much less expired), pursuant to which the Plaintiff-Beneficiary has the right to receive the Policy Proceeds under the Converted Policy; (e) Plaintiff-Administrator, in such May 10 email, has exercised the Conversion Right to convert Bill's group life insurance policy to an individual policy and, accordingly, Plaintiff-Beneficiary has the right to receive the Policy Proceeds under the Converted Policy; (f) the failure by CS and/or CIGNA to provide the Bill-POA-Beneficiary Attorney, on behalf of Bill, with a Policy Conversion Notice means that the time period to exercise the Conversion Election has not even commenced (much less expired), pursuant to which the Plaintiff-Beneficiary has the right to receive the Policy Proceeds under the Converted Policy; (g) Plaintiff-Administrator, in such May 10 email, has exercised the Conversion Right to convert Bill's group life insurance policy to an individual policy and, accordingly, Plaintiff-Beneficiary has the right to receive the Policy Proceeds under the Converted Policy; (h) due to Bill's hospitalization in March 2016 and, soon thereafter, Bill's death on April 10, 2016, forces

beyond Bill's control intervened to prevent Bill from receiving a Policy Conversion Notice and, accordingly, the time period to exercise the Conversion Election has not even commenced (much less expired), pursuant to which the Plaintiff-Beneficiary has the right to receive the Policy Proceeds under the Converted Policy; and (i) Plaintiff-Administrator, in such May 10 email, has exercised the Conversion Right to convert Bill's group life insurance policy to an individual policy and, accordingly, Plaintiff-Beneficiary has the right to receive the Policy Proceeds under the Converted Policy.

29. Since CS's May 10 letter (a) states that CS's Benefits Committee, or its designee, "has the authority to make any and all determinations relating to questions of eligibility to participate in the LTD Life Insurance Plan," (b) claims that Bill's eligibility to participate in the LTD Life Insurance Plan allegedly expired as of February 20, 2016 and (c) states that CIGNA retains "discretionary authority to determine eligibility for benefits" under a converted life insurance policy, then (d) it is CIGNA, not CS, who has the right to decide whether to pay the Policy Proceeds under the Converted Policy to Plaintiff-Beneficiary; (e) CS has no administrative power or jurisdiction to render any administrative adjudication as to whether the Policy Proceeds will be paid under the Converted Policy to the Policy Beneficiary; and (f) the provisions of the Employee Retirement Income and Security Act (ERISA) are inapplicable to, and do not govern, a determination under state law as to whether CIGNA must pay the Policy Proceeds under the Converted Policy to the Plaintiff-Beneficiary.

30. On May 11, 2016, Plaintiffs' Attorney sent an email to CS's counsel asking CS to provide proof of mailing or service of a Policy Conversion Notice to Bill and/or Plaintiff-POA and/or the Bill-POA-Beneficiary Attorney.

31.     On May 13, 2016, Plaintiffs' Attorney sent another email to CS's counsel asking CS again to provide proof of mailing or service of a Policy Conversion Notice to Bill and/or Plaintiff-POA and/or the Bill-POA-Beneficiary Attorney.

32.     On May 17, 2016, Plaintiffs' Attorney sent another email to CS's counsel informing CS that if Plaintiffs' Attorney did not receive a constructive and positive response to the prior emails from Plaintiffs' Attorney, on or before the end of May 18, 2016, then Plaintiffs will have no choice but to conclude that they will have to pursue appropriate litigation to enforce their rights, such as the right of the Plaintiff-Beneficiary to receive payment of the Policy Proceeds under the Converted Policy.

33.     Neither CS nor CIGNA provided any response, by the end of May 18, 2016, in response to the May 10, May 11, May 13 and May 17 emails from Plaintiffs' Attorney.

34.     On May 19, 2016, Plaintiffs' Attorney notified CS's counsel that, due to the lack of a response by CS and/or CIGNA to the May 10, May 11, May 13 and May 17 emails from Plaintiffs' Attorney, Plaintiffs had concluded that they must pursue appropriate litigation to enforce their rights, such as the right of the Plaintiff-Beneficiary to receive payment of the Policy Proceeds under the Converted Policy.

35.     On May 19, 2016, CS's counsel sent an email reiterating the same position that CS's counsel had advanced in its May 10 letter, without addressing the legally independent reasons as to why Plaintiff-Beneficiary has the right to receive payment of the Policy Proceeds under the Converted Policy, as set forth by Plaintiffs' Attorney in its May 10, May 11, May 13 and May 17 emails.

36.     On May 19, 2016, Plaintiffs' Attorney responded to the email earlier that day from CS's counsel and stated in pertinent part:

"Dear Ms. Harders: you have failed to provide any proof that any Notice of Conversion was ever sent to Bill - - much less to Ms. Castronovo, Bill's power of attorney and/or me, as attorney for (a) Bill, (b) Bill's Estate and (c) Ms. Castronovo, whether in her capacity as the Policy Beneficiary and/or the Estate Administrator and/or as Attorney-in-Fact for Bill during his life.

You have failed to provide any response to, much less any law about, the legally independent reasons as to why CIGNA has a contractual obligation to pay the Policy Proceeds to Ms. Castronovo, as Policy Beneficiary.

You have failed to address the fact that, upon the alleged expiration of the LTD group life insurance benefits as of February 20, 2016, all decisions involving eligibility for, exercise of, and entitlement to Conversion Rights under a Converted Individual Policy is solely a matter to be resolved between CIGNA and my client - - and, according to your client's position about an alleged termination of the LTD group life insurance benefits as of February 20, 2016, your client (a) ceased to have any further plan administration powers in connection with the Conversion Rights under a Converted Individual Policy and (b) ceased to have any ability to deploy an ERISA shield in an ostensible attempt to delay the enforcement of our client's rights.

Contrary to your assertion, your client was provided with notice of the existence of the power of attorney prior to Bill's death, and that fact will be further documented during litigation.

We will be filing litigation to enforce our client's non-ERISA, legal rights to receive payment of the Policy Proceeds under the Converted Individual Policy from CIGNA.

Your client will be made a Defendant in that litigation for tortiously interfering with our client's non-ERISA legal rights to receive payment of the Policy Proceeds under the Converted Individual Policy from CIGNA.

We will seek the recovery of our legal fees and litigation expenses from both CIGNA and your client under applicable non-ERISA law.

Since you have failed to provide us with the courtesy of any contact and email information for anyone at CIGNA - - much less CIGNA's in-house counsel - - we have no choice but to proceed with the litigation.

Since you have failed to provide the courtesy of agreeing to accept service of process for your client, we will serve your client directly and inform the Court about such lack of courtesy.

Hopefully, no member of your family, after a loved one's death, is ever treated in such a disdainful and dismissive manner in an unseemly attempt to evade payment of a desperately needed death benefit. If so, then I would be happy to assist them in the enforcement of their rights."

## AS AND FOR A FIRST CLAIM FOR RELIEF
(Breach of Contract Against CIGNA)
(Declaratory Judgment And Money Judgment)

37.     Plaintiffs repeat and reallege all allegations set forth above as if they were repeated here again in their entirety.

38.     Prior to Bill's death, CS and/or CIGNA failed to serve a Policy Conversion Notice on Bill and/or Plaintiff-POA and/or the Bill-POA-Beneficiary Attorney - - and/or Bill and/or Plaintiff-POA and/or the Bill-POA-Beneficiary Attorney failed to receive a Policy Conversion Notice from CS and/or CIGNA - - in violation of applicable law and, therefore, the time period for the exercise of the Conversion Election had not even commenced (much less expired) prior to Bill's death.

39.     On May 10, 2016, Plaintiff-Administrator, as Bill's successor-in-interest, timely exercised the Conversion Election, prior to the expiration thereof under applicable law, pursuant to which (a) Bill's group life insurance policy was converted to an individual policy and (b) the Plaintiff-Beneficiary, due to Bill's death, is entitled to receive payment of the Policy Proceeds under the Converted Policy from CIGNA.

40.     CIGNA has failed and refused to pay the Policy Proceeds under the Converted Policy to the Plaintiff-Beneficiary in violation of the contractual terms that govern the Converted Policy and applicable law.

41.     The Court should issue a declaratory judgment that (a) prior to Bill's death, CS and/or CIGNA failed to serve a Policy Conversion Notice on Bill and/or Plaintiff-POA and/or the Bill-POA-Beneficiary Attorney - - and/or Bill and/or Plaintiff-POA and/or the Bill-POA-Beneficiary Attorney failed to receive a Policy Conversion Notice from CS and/or CIGNA - - in violation of applicable law and, therefore, the time period for the

exercise of the Conversion Election had not even commenced (much less expired) prior to Bill's death; (b) on May 10, 2016, Plaintiff-Administrator, as Bill's successor-in-interest, timely exercised the Conversion Election, prior to the expiration thereof under applicable law; (c) on May 10, 2016, Bill's group life insurance policy was converted to an individual policy; (d) the Plaintiff-Beneficiary, due to Bill's death, is entitled to receive payment of the Policy Proceeds under the Converted Policy from CIGNA; and (e) CIGNA has breached its contractual obligation to pay the Policy Proceeds under the Converted Policy to the Plaintiff-Beneficiary.

42.     The Court should issue a money judgment directing CIGNA to pay the principal sum of at least $239,000 in Policy Proceeds under the Converted Policy to the Plaintiff-Beneficiary, together with pre-judgment interest thereon at the rate of 9% per annum under applicable New York law, and legal fees and litigation expenses incurred by Plaintiffs in enforcing their rights herein in an amount to be determined by the Court.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
(Tortious Interference With Contract Against CS)
(Money Judgment)

43.     Plaintiffs repeat and reallege all allegations set forth above as if they were repeated here again in their entirety.

44.     CS knew, or should have known, about the contractual right of the Plaintiff-Beneficiary to receive payment of the Policy Proceeds under the Converted Policy from CIGNA upon the timely exercise of the Conversion Election, as set forth above, in accordance with applicable law.

45.     CS knew, or should have known, that due to CS's actions and/or omissions, and prior to Bill's death, CS and/or CIGNA failed to serve a Policy Conversion Notice on Bill

and/or Plaintiff-POA and/or the Bill-POA-Beneficiary Attorney - - and/or Bill and/or Plaintiff-POA and/or the Bill-POA-Beneficiary Attorney failed to receive a Policy Conversion Notice from CS and/or CIGNA - - in violation of applicable law and, therefore, the time period for the exercise of the Conversion Election had not even commenced (much less expired) prior to Bill's death.

46. Despite such knowledge, as aforesaid, CS's actions and/or omissions have intentionally prevented, and proximately caused, CIGNA from complying with CIGNA's contractual obligation to pay the Policy Proceeds under the Converted Policy to Plaintiff-Beneficiary, without justification or excuse under applicable law.

47. The Court should issue a money judgment directing CS to pay damages to the Plaintiff-Beneficiary in the amount of at least $239,000, representing the Policy Proceeds under the Converted Policy that would have been paid by CIGNA to the Plaintiff-Beneficiary in the absence of CS's tortious interference as set forth herein, together with pre-judgment interest thereon at the rate of 9% per annum under applicable New York law, and legal fees and litigation expenses incurred by Plaintiffs in enforcing their rights in this action in an amount to be determined by the Court.

### AS AND FOR A THIRD CLAIM FOR RELIEF
(Attorney's Fees And Expenses Against CIGNA
And CS, Jointly And Severally, For Bad Faith
Denial of Coverage)

48. Plaintiffs repeat and reallege all allegations set forth above as if they were repeated here again in their entirety.

49. CIGNA intentionally refused and failed to pay the Policy Proceeds under the Converted Policy to Plaintiff-Beneficiary, in bad faith disregard of CIGNA's duties and obligations to Plaintiffs under applicable law, and under circumstances in which no

reasonable insurance carrier, under the facts set forth herein and/or to be uncovered during discovery in this case, would have denied coverage.

50.     CS intentionally interfered with and proximately caused CIGNA's intentional refusal and failure to pay the Policy Proceeds under the Converted Policy to Plaintiff-Beneficiary, in bad faith disregard of CS's duties and obligations to Plaintiffs under applicable law, and under circumstances in which no reasonable insurance plan administrator, under the facts set forth herein and/or to be uncovered during discovery in this case, would have denied coverage.

51.     By virtue of such bad faith disregard of their duties and obligations to Plaintiffs under applicable law - - and their denial of coverage under circumstances in which no reasonable insurance carrier (CIGNA) and/or no reasonable insurance plan administrator (CS), under the facts set forth herein and/or to be uncovered during discovery in this case, would have denied coverage - - CIGNA and CS are liable, jointly and severally, for the attorney's fees and litigation expenses incurred by Plaintiffs in connection with the enforcement of Plaintiffs' rights in this action, in an amount to be determined by the Court, together with pre-judgment interest thereon at the rate of 9% per annum in accordance with New York law.

**WHEREFORE**, Plaintiffs respectfully request that the Court issue an Order and Judgment granting the following relief herein:

(a) On the first claim for relief, issuing a Declaratory Judgment to the extent requested therein, and awarding Plaintiff-Beneficiary a money judgment against CIGNA for breach of contract in the amount of the Policy Proceeds under the Converted Policy in the aggregate sum of at least $239,000, together with pre-judgment interest thereon at the rate of 9% per annum under New York law, and attorney's fees and litigation expenses incurred by Plaintiffs to enforce their rights in this action, in an amount to be determined by the Court, together with pre-judgment interest thereon at the rate of 9% per annum under New York law;

(b) On the second claim for relief, awarding Plaintiff-Beneficiary a money judgment against CS for damages for tortious interference with contract, representing the amount of the Policy Proceeds under the Converted Policy in the aggregate sum of at least $239,000 that would have been paid to Plaintiff-Beneficiary in the absence of CS's tortious interference, together with pre-judgment interest thereon at the rate of 9% per annum under New York law, and attorney's fees and litigation expenses incurred by Plaintiffs to enforce their rights in this action, in an amount to be determined by the Court, together with pre-judgment interest thereon at the rate of 9% per annum under New York law;

(c) On the third claim for relief, awarding Plaintiff-Beneficiary a money judgment against CIGNA and CS, jointly and severally, for the attorney's fees and expenses incurred to enforce its rights in this action, in an amount to be determined by the Court, together with pre-judgment interest thereon at the rate of 9% per annum under New York law, due to CIGNA's bad faith refusal to pay the Policy Proceeds under the Converted Policy to the Plaintiff-Beneficiary, and due to CS's bad faith interference with Plaintiff-Beneficiary's contract rights that proximately caused CIGNA to engage in a bad faith refusal to pay the Policy Proceeds under the Converted Policy to the Plaintiff-Beneficiary; and

(d) Awarding such other and further relief as the Court deems just, proper and equitable based upon the facts and circumstances set forth herein.

Dated: May 20, 2016
      New York, New York

                         Respectfully submitted,

                        Law Offices of Michael B. Wolk, P.C.

                        By: _____
                            Michael B. Wolk (MW-2272)
                        130 West 42nd Street, Suite 405
                        New York, New York 10036
                        Tel:    917-238-0576
                        Fax:   973-535-1148
                        Email: michael.wolk@wolkgroup.com
                        Attorneys for Plaintiffs